[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated October 1, 2001, the Plaintiff wife instituted this action claiming a dissolution of marriage, custody and support for the minor children, alimony, post majority educational support, an equitable division of the parties' assets and liabilities and other relief as law and equity might provide. By agreement of the parties, pendente lite orders were entered on February 20, 2002, mandating that the defendant pay $218 per week to the plaintiff for support of the minor children. The defendant was also ordered to maintain existing medical insurance for the benefit of the minor children and the plaintiff. A Motion for Modification of Child Support filed by the defendant and based on a claimed reduction in income was denied on July 10, 2002 (Robaina, J.).
 Findings
Testimony was taken and exhibits were entered in this case over a period of several days. The court has considered all of the evidence presented and makes the following findings:
The parties were married on February 27, 1982 in Danvers, Massachusetts. Two children were issue of the marriage: Gregory Aaron Zoll, born November 20, 1984 and Bryan Michael Zoll, born November 20, 1986. Gregory attained majority on his last birthday. No state or municipal agency has or is contributing to the support of the parties or their minor children. The plaintiff is forty-five years of age and has a high school diploma; she is in good health. The defendant is fifty-five years of age and has advanced degrees. He has been on medication for high blood pressure for the past five or six years.
There is no dispute that the plaintiff cared for the children in the home while the defendant earned the family income. There is also no dispute that the parties separated in August of 2000, that the plaintiff is employed in a thirty-five hour per week clerical position and in a part-time cleaning position and that she earns approximately $21,000.00 CT Page 2905-ak per year. Prior to the marriage, the plaintiff was employed in a bank. Subsequent to the marriage, she worked in the defendant's business for approximately two years until the birth of their first child.
The defendant is in the mortgage refinance business. He has had several different jobs over the years with a steady increase in his income. Between 1984 and 1986, his income increased from $26,000.00 to $56,000.00. In 1987, his income increased to $77,000.00. In the late 1980s, his income increased to $84,000.00. By 1994, his income had increased to $96,000.00, then decreased for a short period to $75,000.00. In 1999, the defendant was earning $113,000.00.
On October 2, 1998, the defendant started a business as an LLC called The Mortgage Center. Neither party conducted a valuation of this business, although they had ample opportunity to do so. The business has been quite successful within a short period of time, generating a gross income of $26,487 in the last two months of 1998, $187,578 in 1999, $75,119 in 2000, $88,678 in 2001, and in the first nine months of 2002 generating a gross income of $112,893. The defendant also began employment as a limousine driver in October 2002, while continuing his mortgage business.
In late 1999, the defendant removed control of the family checkbook from his wife's responsibility, began to pay the bills, began to gamble at the casinos, and stopped paying the mortgage on the family home. The bank threatened to foreclose and the family home was sold in August 2000. The defendant removed most of the household furnishings to his condominium including some items belonging to his wife's family. Subsequently, the defendant cashed a $556 insurance rebate check by falsifying the plaintiff's name, did not share the rebate check with her and paid minimal support to the family for the next twelve to eighteen months.
 The Mortgage Center:
With respect to the defendant's business, he makes the following claims:
— he and a Mr. Richard Sheldon are 50% owners of this business.
 — Mr. Sheldon put $50,000 into the business at its inception; the defendant contributed nothing; Mr. Sheldon would provide an office, secretary, fax and telephone but would not be a working partner.
CT Page 2905-al
 — during 1998, the business grossed $26,487. The defendant paid himself $16,150.00[1] for that year and zero to Mr. Sheldon.
 — in 1999, the business grossed $187,578 for the year and paid to the defendant $81,580 and paid to Mr. Sheldon $40,100 (only $10,000 less than the initial $50,000 investment).
 — at some point that year, Mr. Sheldon turned his initial investment of $50,000 into a loan.
 — in the year 2000, the business earned a gross income of $75,119. The defendant paid himself $28,557 and Mr. Sheldon was paid $18,300; despite that, Mr. Sheldon "threatened to close the business" unless the defendant did not sign over a note to him agreeing to pay him an additional $46,000.
 — the defendant signed the note which is currently paid in full, with the final sum of $30,000 paid after the dissolution was filed.
 — in 2001, the gross annual income of the business was $88,678. The defendant paid himself $25,998 and $39,014 to Mr. Sheldon.
 — from January 2002 through September 2002, the business earned a gross income of $112,893. The defendant paid himself only $15,000 but paid $69,609 to Mr. Sheldon. The defendant paid himself nothing until June 2002 ($9,000) and September 2002 ($6,000).
 — the defendant was forced to take on a job as a limousine driver in October 2002 to supplement his income; he works sixty-five hours per week as a limo driver and thirty to forty hours per week at his mortgage business through cell phone.
The court is the sole arbiter of the credibility of witnesses.Christine v. Eager, 129 Ct. 62 (1942). The court finds that the defendant's explanation of the series of purported transactions with Mr. Sheldon lacks credibility. There is no evidence in the record (other than the defendant's statements), that is consistent with the defendant's proposition that Mr. Sheldon is a bonafide partner. The defendant failed to call Mr. Sheldon as a witness. The defendant provided no documentation to support his claim of a partnership agreement or the $50,000 loan. He further conceded that no documentation exists.
The evidence of those transactions, as reflected on the partnership tax returns produced by the defendant, was not persuasive. Even assuming that CT Page 2905-am the $50,000 was a valid loan, the defendant's explanation regarding the $46,000 note also lacks credibility. The court concludes that the defendant has failed to prove that he is required to share 50% of the profits from the alleged business operation with Mr. Sheldon. The defendant's actions concerning payment of the alleged note to Mr. Sheldon constitute an attempt to transfer net profits out of his control to decrease his income while the divorce is pending.
There is sufficient evidence in the record for the court to find that the defendant has average annual gross earnings of at least $65,000. That finding is based upon the court's review of transaction statements, the tax returns of the parties from 1999 through 2001, the testimony of the parties and all exhibits, and the average of the defendant's most recent financial affidavits from September 2002, December 2002 and January 2003. The court also finds that the defendant has the earning capacity to earn said sum from his business endeavors in the future.
The parties have filed separate tax returns for the past two years. In addition, the defendant changed his health insurance plan in the past year and has urged the plaintiff to apply for HUSKY for herself and the two children because he cannot afford to pay the premiums. The plaintiff has resisted doing so because she believes that HUSKY is for people on welfare.
The court finds the testimony of the plaintiff to be compelling and credible. It is clear that the breakdown of the marriage was caused, primarily by the parties' financial misfortunes which were, in part, a result of the defendant's gambling problems. It is also clear to the court that the defendant has taken extensive steps to create the impression of a vast reduction in his income which the court does not find credible.
The court has jurisdiction of this matter and all statutory stays have expired. The allegations in the complaint have been proven and are true. The marriage has broken down irretrievably with no hope of reconciliation.
 Orders
The court has considered all of the testimony and exhibits entered at trial as well as the factors set forth in Connecticut General Statutes Secs. 46b-81, 46b-82, and 46b-62 and other pertinent statutes, the parties' earnings, and earning capacity differentials, and the consequences of the financial awards set forth below. The court has also considered the parties' educational backgrounds, and the contributions of CT Page 2905-an the wife to the care of the children and the home throughout the course of the twenty-one-year marriage.
It is ordered that a decree dissolving the marriage on the grounds of irretrievable breakdown shall enter.
 Custody and Visitation
By agreement of the parties, the Wife and the Husband shall have joint custody of the minor child Bryan, primary residence with the Wife. The parties shall consult with each other concerning all major events affecting the child's life, but in the event that they are unable to agree, the Wife shall have the final decision-making authority. The Husband shall have the rights of reasonable, flexible and liberal visitation with the minor child. He shall be entitled to two weekends per month with the child and, given the child's age, may work out any additional visitation that the child wishes. During the summer, each parent shall be entitled to uninterrupted vacation time with the child, with notification by May 1 of each year as to the time they wish to spend with the child. The parent not with the child shall be informed of all travel plans of the child and have reasonable telephone contact with the child. The parties shall equally divide all school vacation breaks.
There shall be reasonable telephone and email contact between the child and the Husband. Each of the parents shall continue to have a full and active role in providing a sound ethical, economic, and educational environment for the child. These powers shall not be exercised for the purpose of frustrating, denying, or controlling in any manner the social development of the child by the other parent. The parents shall exert their best efforts to work cooperatively to develop future plans for the child consistent with the best interests of the child and to amicably resolve such disputes as may arise from time to time.
 Financial orders
1. Alimony and child support
Based upon the respective estimated net incomes of the parties, the defendant shall pay $175 per week periodic alimony to the plaintiff until the child support obligation terminates. At that time, the alimony award shall be $300.00 per week for a period of nine years or until the earlier of the death of either party, the Wife's remarriage, or the Wife's cohabitation as defined by statute. Said amount shall be nonmodifiable as to term. CT Page 2905-ao
Child support is ordered in the amount of $160.00 per week which is pursuant to Connecticut child support guidelines. The parties shall divide the unreimbursed medical/dental and orthodontic expenses for the minor child, 60% to the defendant and 40% to the plaintiff.
2. Health insurance
Pursuant to Conn. Gen. Stat. Sec. 46b-84 (e), the defendant shall maintain the present medical/dental insurance for the benefit of the children, as long as the insurance continues to be available through his place of employment and at reasonable cost to him. Should this no longer be available or at reasonable cost, the parties shall apply for the Husky plan.
 3. Medical insurance — plaintiff
The Plaintiff shall be responsible for her own medical insurance coverage, and the Defendant shall cooperate with the Plaintiff obtaining COBRA benefits under this policy.
4. Life insurance
The parties shall maintain their current life insurance policies for the benefit of the children so long as an alimony/child support obligation remains.
5. Marital assets
Given the defendant's removal of most of the household furnishings without the plaintiff's consent, the plaintiff shall receive any joint bonds listed on the parties' financial affidavits. The plaintiff shall be entitled to the automobile, Schwab One checking, IRA, and Farmington Savings Bank accounts listed on her financial affidavit. The defendant shall be entitled to the ING and Farmington Savings Bank accounts as listed on his financial affidavits.
The business, The Mortgage Center, shall be the exclusive property of the defendant.
6. Personal Property
The parties shall divide any remaining personal property to their mutual satisfaction. The defendant shall return to the plaintiff items that were gifts from family. In the event that the parties are unable to agree on said division, the issue shall be mediated by family relations. CT Page 2905-ap The court retains jurisdiction.
7. Division of debts
The parties shall each be responsible for the debts listed on their respective financial affidavits. The defendant shall be solely responsible for any unpaid past taxes owed to the IRS.
8. Tax exemptions
The plaintiff shall take Bryan and Gregory as dependents for income tax purposes in tax year 2002 and alternate them with the defendant thereafter, except in those years when the defendant assumes the college expenses for the children.
9. Attorneys fees
Each party shall be responsible for their respective attorneys fees.
 BY THE COURT, PRESTLEY, J.